**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ERICK A. LOPEZ VAZQUEZ**<br><br>**Plaintiff**<br><br>v.<br><br>**WENDCO OF PUERTO RICO, INC., ABC INSURANCE COMPANY, JOHN DOE, JANE DOE and other unknown defendants.**<br><br>**Defendants** | CIVIL NO. 16-2628<br><br>TITLE I OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101, *et seq.*, SUPPLEMENTAL JURISDICTION OVER COMMONWEALTH LAW CLAIMS AND DAMAGES.<br><br>PLAINTIFF REQUESTS TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** the plaintiff, Erick Alexander López-Vázquez, and through the undersigned counsel respectfully states and prays:

### I. Parties.

1. Erick A. López-Vázquez ("plaintiff") is of legal age, married, resident of Carolina, Puerto Rico and a citizen of the United States.

2. Plaintiff was employed by defendant WENDCO of Puerto Rico, Inc., specifically to work as crew member, employee Id. 270435, at Wendy's Plaza Escorial, since July 12, 2005.

3. Defendant, WENDCO of Puerto Rico, Inc. ("Wendy's"), is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, registry number 41517, with a physical address at 1155 Ponce de León Ave., San Juan, Puerto Rico 00917 and postal address at P.O. Box 11662, San Juan, Puerto Rico 00922-1662.

4. According to official online records of the Department of State of Puerto Rico as of September 9, 2016, Wendy's resident agent is Mr. Jorge Colón-Gerena, physical address at

Ave. Ponce de León, Parada 17, Edificio #1155, San Juan, Puerto Rico 00907 and postal address at P.O. Box 11662, San Juan, Puerto Rico 00922-1662.

5. Defendants John Doe one (1) through twenty (20) are various persons who participated in the acts described hereinafter and whose collusive actions and/or omissions caused the damages alleged herein. The identities of defendants John Doe one (1) through twenty (20) are unknown to the plaintiff at this time.

6. Co-defendant ABC Insurance Company is an entity organized and/or authorized to conduct insurance business, which furnished insurance coverage to the co-defendants for the claims made by plaintiff in this complaint.

## II.  Jurisdiction and Venue.

7. This is a civil action for damages brought by plaintiff--regarded as a disabled man by defendant--to seek redress for defendant's discriminatory acts, omissions and disparate treatment on the basis of his disability, which adversely affected plaintiff's terms, conditions and privileges of employment, all in violation of Title I of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101, *et seq*., 11 L.P.R.A. § 501 *et seq*. and 31 L.P.R.A. §§ 5141 & 5142.

8. The court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 *et seq*., and by virtue of the Right-To-Sue letter issued by the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") on June 14, 2016, a true and accurate copy of which is attached hereto.

9. This action properly lies in the United States District Court of Puerto Rico, pursuant to 29 U.S.C. § 1931(b), because the claim arose within the judicial district and the unlawful employment practices were committed in this judicial district.

10. Plaintiff has complied with all the conditions precedent and jurisdictional prerequisites to bring an action for disability discrimination under Title I, to wit:

a. Plaintiff was employed by Wendy's on July 12, 2005. Plaintiff was regarded as having a disability and reasonably accommodated by Wendy's, after an interactive process whereby Wendy's and CODERI ("Colegio de Educación Especial y Rehabilitación Integral, Inc."), acting on behalf of plaintiff, identified possible accommodations which could help him comply with the employment position's requirements. All this and more is or should be a matter of record in Wendy's files.

b. Commencing on or about August, 2015, defendant engaged in employment discrimination on the basis of plaintiff's disability when managers Mr. Alexis Ruiz and Mr. Ramírez at Wendy's in Plaza Escorial, commenced a pattern of harassment, hostile and discriminatory conduct against plaintiff, solely motivated by his disabilities, which are a matter of record in Wendy's files. Plaintiff was constantly humiliated by both managers alone or in front of other employees, making him the subject of ridicule and humiliation.

c. Further, Messrs. Ruiz and Ramírez constantly assigned unreasonable, contradictory and humiliating chores to plaintiff, in violation of his reasonable accommodation, designed to create an adverse working environment that would force him to quit his position. A witness overheard Mr. Ruiz remark to a Mr. Rafael Sepúlveda, speaking about plaintiff, that "since I cannot fire him, I am going to put pressure on him so he will leave" ("como no lo puedo botar, le voy a poner presión para que se vaya").  Upon information and belief, the witness has expressed fear of retaliation by Wendy's if identified.

d. Wendy's discriminatory animus is further supported and exacerbated by comments made by a supervisor, Mr. Julio Meléndez, to plaintiff's mother over the phone, when he matter-of-factly said to her "I am not going to pay an employee to throw away the trash only" ("yo no le voy a estar pagando a un empleado por botar basura nada más").

e. On or about October 23, 2015, plaintiff filed a complaint of retaliation with the Anti-discrimination Unit of the Department of Labor of Puerto Rico ("UAD") and the EEOC, uadau 15-730c and 16H-2016-00046C, respectively.

f. On June 14, 2016, the EEOC notified the plaintiff of the termination of any further processing of his charge and his right to institute this action, within ninety (90) days of the receipt of the notification.

g. Plaintiff has filed the instant action within ninety (90) days of receipt of the referenced notice of right to sue.

### III. Supplemental Jurisdiction.

11. Supplemental jurisdiction is invoked over plaintiff's Commonwealth law claims against defendants, unjust dismissal and emotional distress and resulting affliction and suffering, in attention to the fact that plaintiff's claim arises from the same nucleus of operative facts as those affirmed under federal law.

12. Plaintiff invokes the application of Puerto Rico's disability discrimination statute, Law No. 44 of July 2, 1985, as amended, 11 L.P.R.A. § 501 *et seq*., and Articles 1802 & 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 & 5142 to the present controversy, in consideration to the factually related issues, thus reasserting the inequity, prejudice and damages caused.

### IV. Factual Allegations.

13. Plaintiff is a thirty (30) year old man born on April 6, 1986, who suffers from several health conditions such as agenesis of the corpus callosum, mild mental retardation, ventriculomegaly and osteopetrosis, among other disabilities.

14. Regardless of his disabilities, plaintiff is married, has two children and has always strived to learn a trade and work for his sustenance and his family's.

15. Plaintiff was employed by Wendy's on July 12, 2005 to work as a crew member at the restaurant located at Plaza Escorial in the municipality of Carolina, Puerto Rico.

16. Mr. José Rodríguez, the restaurant manager at the time, hired plaintiff with full knowledge of his conditions and limitations.

17. Some time after plaintiff was employed, Wendy's and CODERI ("Colegio de Educación Especial y Rehabilitación Integral, Inc."), acting on behalf of plaintiff, engaged in an interactive process whereby Wendy's regarded plaintiff as having a disability and identified

possible reasonable accommodations which could help him comply with the employment position's requirements. All this and more is a matter of record in Wendy's files.

18. CODERI is a not-for-profit corporation organized in 1994 which provides services to children, young adults and adults with intellectual limitations in order to help them reach their maximum cognitive, social and emotional potential so they can lead an independent life. Among the services CODERI offers is job placement.

19. This process lasted approximately a year while CODERI conducted follow-up visits. Wendy's agreed that plaintiff could continue performing the essential functions and duties of his position under the supervision of the restaurant manager.

20. Plaintiff's functions and duties included serving soda; sweeping and mopping the restaurant floor; cleaning chairs, tables, glasses, trash bins and parking lot; drive-thru window delivery; chopping onions and tomatoes; putting the mixture in the Frosty machine; warming the chili and cheese; cleaning the grill for the hamburger patties and actually grilling them; and frying fries.

21. After plaintiff was reasonably accommodated, he continued to perform all the essential duties and functions required from his position without any negative performance evaluations or dissatisfaction from Wendy's--to his knowledge.

22. Approximately in August, 2015, however, Mr. Alexis Ruiz was assigned to a managerial position at the restaurant located at Plaza Escorial. Mr. Ruiz supervised plaintiff in his daily functions.

23. Upon the arrival of Mr. Ruiz to the Wendy's in Plaza Escorial, a pattern of harassment, hostile and discriminatory conduct began against plaintiff, solely motivated by his disabilities which, again, are a matter of record in Wendy's files.

24. Plaintiff was constantly humiliated by Mr. Ruiz alone or in front of other employees, making him the subject of ridicule and humiliation. Further, Mr. Ruiz constantly assigned unreasonable and humiliating chores to plaintiff, designed to create an adverse working environment in violation of his reasonable accommodation that would force him to quit his position.

25. Mr. Ruiz's actions included calling plaintiff "liar", "lazy", "slow" and "sloppy" in front of managerial and floor staff, assigning him to work outside under the sun and remarking to plaintiff "I am going to talk so you will assigned outside" and innuendo that he did not want plaintiff working inside the restaurant so customers would not have to see him.

26. The chores outside included heavy lifting and pushing of water buckets, and other physical exertions which ran counter to his reasonable accommodation and, thus, to his medical conditions. These actions by defendant not only caused plaintiff great physical pain and exposed him to possible bone fractures due to his medical condition of osteopetrosis, but also made him feel nervous, anxious, unable to speak and weep uncontrollably, causing his mother to take him to a physician who prescribed medications for his pain and nerves.

27. Mr. Ruiz would also give plaintiff instructions inconsistent with instructions previously imparted by other managerial personnel in order to create the false impression that plaintiff did not follow instructions and/or complete his chores.

28. Plaintiff became fearful of going to work and face unjust and humiliating reprimands by Ruiz and/or Mr. Ramírez, another managerial employee, because he had not completed the chores assigned by either of them due to the contradictory instructions imparted.

29. While addressing plaintiff, Mr. Ruiz would also aggressively gesture with his hands on plaintiff's face or pointing his finger at plaintiff's face or yelling in plaintiff's face.

30. All these actions took their toll on plaintiff and made him feel humiliated and demeaned. Some of these actions and/or remarks were made in front of plaintiff's co-workers.

31. An employee who fears retaliation should his/her identity be revealed, overheard Mr. Ruiz remark to a Mr. Rafael Sepúlveda, speaking about plaintiff, that "since I cannot fire him, I am going to put pressure on him so he will leave" ("como no lo puedo botar, le voy a poner presión para que se vaya").

32. Wendy's discriminatory animus is further supported and exacerbated by comments made by a supervisor, Mr. Julio Meléndez, to plaintiff's mother over the phone, when he matter-of-factly said to her "I am not going to pay an employee to throw away the trash only" ("yo no le voy a estar pagando a un empleado por botar basura nada más").

33. On another occasion, Mr. Ramírez remarked to plaintiff "today you are going to clean the sidewalk and I have to watch you because I was told that you are lazy and sloppy".

34. The harassment and humiliation that plaintiff endured was so severe and pervasive that the conditions of his employment were materially altered, creating an abusive working environment which no reasonable person in his shoes could tolerate. Due to the adverse employment environment to which he was subjected, plaintiff reported to the State Insurance Fund, where he remained under treatment to preserve his mental health.

35. Plaintiff complained internally with Wendy's human resources division, to no avail. He was treated as the culprit rather than the victim.

36. In addition, Wendy's failure to act upon plaintiff's disability discrimination claim, establishes that Wendy's does not have effective anti-discrimination policies and responsive grievance procedures that would deter supervisory personnel from engaging in discriminatory, offensive and unlawful misconduct.

37. Instead of protecting plaintiff in his employment as required under Title I, Wendy's shunned plaintiff and failed to act on his internal grievance.

38. Upon information and belief, Wendy's never investigated plaintiff's claims and/or took disciplinary or remedial measures against the managers who discriminated against him.

39. Following Wendy's actions and omissions, plaintiff was extremely distraught and devastated. Plaintiff was evaluated and ordered to go on a leave of absence.

40. On or about October 23, 2015, plaintiff filed a complaint of retaliation with the Anti-discrimination Unit of the Department of Labor of Puerto Rico and the EEOC, uadau 15-730c and 16H-2016-00046C, respectively.

41. On June 14, 2016, the EEOC notified the plaintiff of the termination of any further processing of his charge and his right to institute this action, within ninety (90) days of the receipt of the notification.

42. Plaintiff has filed the instant action within ninety (90) days of receipt of the referenced notice of right to sue.

43. Wendy's unlawful and discriminatory actions have caused plaintiff damages and hindered his capacity to generate income, as well as to comply with his legal obligation to mitigate the losses produced by Wendy's actions and unlawful omissions.

44. Upon recommendation of his psychiatrist and due to the actual mental anguish, pain and suffering caused by Wendy's, plaintiff was unable to return to work and lost his job at Wendy's.

45. Indeed, Wendy's succeeded in forcing plaintiff to quit as boldly predicted by Mr. Ruiz when he remarked that "since I cannot fire him, I am going to put pressure on him so he will leave" ("como no lo puedo botar, le voy a poner presión para que se vaya").

46. The willful acts and omissions of defendant, its management and agents, have repeatedly violated plaintiff's federal rights as protected by Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, which guarantee him a right to be free from discrimination and/or an adverse working environment on the basis of his disability.

47. The referenced acts and omissions also have violated plaintiff's rights under Law Law No. 44 of July 2, 1985, as amended, 11 L.P.R.A. § 501 *et seq.*, and 31 L.P.R.A. §§ 5141 & 5142, which likewise protects individuals from discrimination in the workplace on the basis of disability.

48. Finally, the Puerto Rico Civil Code provides a cause of action for damages caused to plaintiff by the acts and/or omissions of defendant, their agents and/or employees.

## FIRST CAUSE OF ACTION

49. Plaintiff repeats and re-alleges each and every allegation contained in the aforementioned paragraphs.

50. Wendy's has discriminated against plaintiff in the terms and conditions of his employment based solely on his disability, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*.

51. To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must prove: (1) that he was "disabled" within the meaning of the ADA; (2) that he was able to perform the essential functions of his job with or without accommodation; and (3) that he was discharged or adversely affected, in whole or in part, because of his disability.

52. For purposes of the ADA, one is considered disabled if he (a) has a physical or mental impairment that substantially limits one or more of her major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment.

53.     Plaintiff meets the prima facie case of disability under the ADA. Plaintiff suffers from Agenesis of the corpus callosum, mild mental retardation, Ventriculomegaly and Osteopetrosis, he has a record of his impairments and so does Wendy's due to the fact that defendant engaged with CODERIS in a one-year effort to identify reasonable accommodation for plaintiff in Wendy's, and Wendy's regarded him as disabled. This is or should be a matter of record in Wendy's files.

54.     The discriminatory actions were unprovoked and caused with actual knowledge of plaintiff's disability and reasonable accommodation. Wendy's lack of proper anti-discrimination policies and procedures, and failure to adequately train its managerial personnel in the prevailing rule of law spurred the unlawful and offensive discriminatory actions.

55.     As a result of the aforesaid discrimination, plaintiff has been adversely affected in his employment, in fact losing the same. Plaintiff has suffered great pain, anguish, anxiety, fear and humiliation, and he will continue to suffer these and other non-pecuniary damages and monetary damages.

## SECOND CAUSE OF ACTION

56.     Plaintiff repeats and re-alleges each and every allegation contained in the aforementioned paragraphs.

57.     Defendant willfully discriminated against plaintiff because on the sole basis of his disability, protected conduct under Title I. Defendants knew or should have known that the workplace policies and personnel actions that they took against plaintiff amounted to unlawful discrimination and had a disparate impact on plaintiff's conditions of employment.

58. Wendy's also knew or should have known that plaintiff had received satisfactory performance evaluations throughout his more than ten (10) year tenure at the restaurant at Plaza Escorial.

59. These adverse employment actions escalated to the point that plaintiff had no choice but to report to the State Insurance Fund and go on leave of absence from his job at Wendy's to protect his state of mind. Plaintiff is traumatized by the actions and omissions of Wendy's, including, but not limited to the Wendy's deliberate failure to investigate his claims and protect him from further unlawful conduct. Instead of treating him as the victim, Wendy's has treated him as the offender.

60. Plaintiff is under psychiatric treatment due to these acts and was been forced to go on leave to preserve his mental health. As stated hereinbefore, upon finishing his treatment at the State Insurance Fund and the leave of absence, he could not return to his job to continue enduring the discriminatory and disparate work environment.

61. This unilateral, unfounded and adverse employment discriminatory actions had a detrimental and grave impact on his mental health. The events described herein amount to unlawful discrimination and give rise to an actionable claim under ADA, which entitles plaintiff to be made whole by granting him damages in the form of actual back pay, including related benefits and interest thereon; and front pay, fringe benefits and any other applicable compensation, plus costs, interests and attorneys' fees.

## THIRD CAUSE OF ACTION

62. Plaintiff repeats and re-alleges each and every allegation contained in the aforementioned paragraphs.

63. Puerto Rico's disability discrimination statute, Law No. 44 of July 2, 1985, as amended, 11 L.P.R.A. § 501 *et seq.*, bans discrimination in the workplace on the basis of a person's disability. The facts described above establish that defendants engaged in conduct prohibited by Law 44 by discriminating against plaintiff on the appalling basis of his disability.

64. Law 44 provides for relief in the form of actual damages, mental anguish, back pay, benefits and attorney's fees.

65. Plaintiff requests that the above be deemed a further act of discrimination under the invoked federal statutes and a violation also of Law 44.

### FOURTH CAUSE OF ACTION

66. Plaintiff repeats and re-alleges each and every allegation contained in the aforementioned paragraphs.

67. The aforesaid actions of defendant were extreme and egregious and by engaging in the aforesaid action, said defendant intended for plaintiff to suffer emotional distress, mental anguish and economic damages.

68. As a result of defendant's intentional malicious and/or negligent conduct, plaintiff has suffered mental and psychological anguish and lost salaries, and has suffered damages, which are actionable under Articles 1802 & 1803 of the Civil Code of Puerto Rico.

69. Defendant's aforesaid conduct is actionable as an intentional or negligent infliction of emotional distress.

70. Defendant is vicariously liable under Article 1803 of the Civil Code of Puerto Rico for the actions and omissions of defendant and other unknown employees who took part in the alleged facts.

## V. Prayer for Relief.

**WHEREFORE**, plaintiff respectfully requests that this Court enter Judgment:

a)  Declaring that the acts and practices complained herein were in violation of Title I of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101, *et seq.*, 11 L.P.R.A. § 501 *et seq.* and 31 L.P.R.A. §§ 5141 & 5142.

b)  Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated.

c) To provide plaintiff equitable and injunctive relief against the defendant, in the form of back pay with interests and front pay.

d)  Directing co-defendants to pay jointly and severally to the plaintiff compensatory and punitive damages in the following manner:

1. Compensatory damages to plaintiff in the amount of TWO MILLION DOLLARS.

2. Punitive damages in the amount of TWO MILLION DOLLARS.

3. Damages under Law No. 44.

4. Reasonable attorneys' fees and costs.

5. Such other relief as to the Court appears reasonable and just.

## VI.  Jury Trial Demanded.

Plaintiff demands trial by jury on all issues raised in this Complaint.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of September, 2016.

*DEL VALLE-EMMANUELLI LAW OFFICES*
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax 787.722.1932

S/Luis F. del Valle_____
LUIS F. DEL VALLE-EMMANUELLI
USDC NO. 209514
dvelawoffices@gmail.com